## Wark v. Wark, Appellant.

*Divorce—Indignities to the person—Insufficient evidence.*

In an action for divorce on the ground of cruel and barbarous treatment and indignities to the person, a divorce will be refused where the evidence in support of the libel discloses that most of the acts complained of had taken place some years prior to the commencement of the proceedings and that they were of a trivial character. Where there is but little proof of any recent happenings of such nature as would furnish grounds for a divorce, a decree granting a divorce will be reversed.

Argued October 15, 1919.   Appeal, No. 45, October T., 1919, by respondent, from judgment of C. P. No. 1, Philadelphia Co., June T., 1917, No. 143, granting a divorce in the case of John Arthur Wark v. Minnie A. Wark.    Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ.    Reversed.

Libel in divorce.   Before BREGY, P. J.

The case was referred to John L. Burns, Esq., as master, who recommended that a divorce be granted.

On exceptions to master's report the court dismissed the exceptions and granted the divorce.   Respondent appealed.

*Error assigned* was the order of the court.

*Paul Freeman,* and with him *W. Roger Fronefield,* for appellant, cited: Hexamer v. Hexamer, 42 Pa. Superior Ct. 226; Biddle v. Biddle, 50 Pa. Superior Ct. 30; Huyett v. Huyett, 27 D. R. 101; Platt v. Platt, 38 Pa. Superior Ct. 551; Russell v. Russell, 37 Pa. Superior Ct. 348.

*F. F. Brightly,* for appellee, cited: Brubaker v. Brubaker, 4 D. R. 185; Elmes v. Elmes, 9 Pa. 166; Krug v. Krug, 22 Pa. Superior Ct. 572; Ponthus v. Ponthus, 66 Pa. Superior Ct. 257.

OPINION BY TREXLER, J., December 10, 1919:

The parties were married in December, 1896, and lived together until April 29, 1917, when the wife caused the arrest of the libellant for nonsupport. Three children were born to them. The libel charges cruel and barbarous treatment and indignities to the person.

Following them in the order they appear in the master's report, the facts stated as briefly as possible are as follows: The husband was a dentist and had his office in connection with their home. Beginning six months after their marriage, the wife began to nag the libellant, accusing him of spending too much time with his patients and being too familiar with them in his conversation. He considered a certain degree of familiarity essential to his success, and he stated that he was required, when patients called, to try to be funny, to shake hands with them and put his hand on their shoulders, in order to win their confidence. The subject was brought up frequently at meals and at night after retiring, "upsetting his slumber." She "railed all night," but this occurred seven or eight years ago. The wife is charged with neglecting her household duties, not getting up early enough in the morning, and staying out in the afternoon, and not having proper dinner in the evening. The charge is trivial. The libellant tells us what he had for supper, and there seems to be no serious cause for complaint. A Mr. Carroll, who was a frequent caller at the home about three or four years ago, and took about fifty-two evening meals there, testified to the excellence of the food, and that they got along pretty well. The charge that the wife went away on long vacations with the children, leaving him to cook his own food and do the housework, she not trusting him alone with the hired help, loses its effect when we refer to libellant's testimony on cross-examination, he admitting that he made no objection to her absence, except that on occasions he thought she should visit the mountains instead of the shore.

The wife brought intoxicating liquors into the house, contrary to her husband's order, and treated her friends. This happened very infrequently, for she had few friends visiting her. There was no drunkenness, and within the last four years preceding the filing of the libel, he saw no liquor on the premises and smelt none on her breath. Again recurring to the housemaids, the master finds that she accused him of being too familiar with them, but this was some years ago. The allegation that the wife employed a detective to watch the husband is not supported by any competent proof. The wife accused the libellant of buying articles of clothing for a Miss D., a patient. This occurred in 1897. Libellant said that patients reported to him that his wife had made accusations of familiarity on his part with them, but this statement is general with no particulars as to time or persons. In 1897 he caught her mother listening at the office door. The finding that she threatened one of his female patients that she would put a pistol under her nose if she came too frequently, is without any foundation. The threat was not made to any patient, but was apparently mere bravado, and spoken to the libellant's sister. She did not desire the doctor to employ a secretary. She wrote a letter in 1913, unsigned, stating that the patient was not wanted inside of their home, and with the understanding that the work had been finished, she did not want her to enter again. The libellant knew nothing about the letter. She accused the libellant of undue familiarity with certain women, and although not directly charged, the inference that a charge that he was unfaithful to his marriage was intended, but it is important to note that these charges were never made in the presence of any other persons. The parties did not agree as to the religious instruction of the children, and there was some evidence of disrespect shown to him before the children. On two or three occasions she expressed pro-German views. We attach no importance to the act of the wife in having her husband arrested for nonsupport. The court,

by the judgment entered, decided that the action was well brought and made an order for support, which several months afterwards was increased. Whatever consequence injurious to him followed, must be charged to libellant's own dereliction. The proceedings are no bar to the present action, Carey v. Carey, 25 Pa. Superior Ct. 223, but they are pertinent to show nonsupport.

The wife is charged with having accused several women with undue familiarity with her husband, and attributing actions to them derogatory to their reputations. This, on first blush, seems most serious, but none of these conversations so testified to occurred in the presence of libellant, nor were they repeated to him until after the present action was brought, with the single exception of the threat made against one of the patients above referred to. He certainly could not worry about things of which he had no knowledge, and facts unknown to him could not render his life burdensome or his condition intolerable. He states that he was afraid to eat, fearing that she would poison him, but there was absolutely no apparent ground for such fear, as she sat at the same table and partook of the same food as he. She refused sexual intercourse in 1913, fearing his conduct with other women might make it dangerous. This attitude on her part was not shown to be permanent; and he made no attempt to resume relations with her since that time. It is undoubtedly true that the wife was very jealous, and did not wish her husband to seek the society of other women. He was a member of a church choir, and associated on proper occasions with the other members of the choir of the opposite sex. There was no loss of health shown, nor any definite proof as to loss of business; in fact the libellant worked both night and day, and was prosperous.

We assume that the testimony submitted is true. The respondent did not testify. On cross-examination, the force of much of the testimony was weakened. Most of the conditions complained of, existed years ago, and al-

though we cannot hold that the patience of a husband in submitting to intolerable treatment should operate against him, when the proof submitted refers to wrongs done many years ago, and there is very little proof as to recent happenings, we may assume that things had bettered themselves to such an extent that the former occurrences were required in order to give a plausible appearance to libellant's case. For the three or four years before the proceedings were begun, there is almost an absence of proof of any specific acts of the wife which would tend to support the charge. It was not until the order of support was made that the husband was stirred into action. The libel has much the nature of a stale claim. The testimony above referred to is to a large extent trivial, and we probably should not have commented on it at such length, but as both the master and court below came to a conclusion contrary to our view, we thought it best to give a full analysis of it.

The decree of the lower court is therefore reversed and the libel dismissed at the cost of the appellee.