## Parcella, Appellant, *v.* Parcella.

Argued March 24, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*I. S. Bernstein,* for appellant.

*Maurice Freedman,* with him *John E. Walsh, Jr.,* for appellee.

OPINION BY FINE, J., July 15, 1949:

This divorce action was instituted by the husband alleging indignities and cruel and barbarous treatment. The master recommended that a divorce be granted on the ground of indignities; that the prayer of the libel as to cruel and barbarous treatment be dismissed. The wife's exceptions to the master's report were sustained, the libel was dismissed and the husband has appealed. The record, which is unnecessarily protracted, consists of 758 pages of testimony, of an exhaustive and detailed

73-page master's report and of over 100 pages of printed argument.

The sole issue for determination is whether, after independent review of the testimony, as is required in such cases, the libellant is an "injured and innocent spouse" within the meaning of §10 of The Divorce Law. We are satisfied after a painstaking and careful scrutiny of the voluminous record that the court below properly concluded that the libellant was not an injured and innocent party and that the complaints charged by him were provoked by his own conduct. The decree will be affirmed.

Libellant's principal complaint is his charge of continuous unfounded accusations of infidelity by the respondent, persisted in sufficiently long to become a course of conduct and as such sufficient to make out a case of indignities to the person. These accusations thread themselves throughout libellant's testimony and constitute in the main the fabric of his action, the crux of the case from which other allegations of indignities stem. *Blose v. Blose,* 163 Pa. Superior Ct. 322, 61 A 2d 370; *Fullwood v. Fullwood,* 156 Pa. Superior Ct. 409, 40 A. 2d 876; *Wittmer v. Wittmer,* 151 Pa. Superior Ct. 362, 30 A. 2d 174.

We cannot agree with libellant that his wife's accusations were unfounded. His actions naturally germinated her suspicions, which he permitted to ripen into many unpleasant situations that could have been avoided if his conduct were motivated by an affectionate discreetness or, at least, by respectful and dutiful consideration of his wife. He ignored her to seek relaxation in the companionship of others; did not confide in her, except when at times requested, when and where he intended to go in the evenings; had lipstick on his shirts which he did not satisfactorily explain; later, had his shirts laundered not by a regular laundry but presumably by his female cashier to avoid tell-tale marks;

insisted on keeping in his employ the cashier whose husband was in military service overseas, although his wife was very suspicious of his relations with this employe; refused to discharge the cashier and stood mute after his wife had told her it was best she leave her employment for the domestic harmony of the Parcella family; was seen with the cashier on two or three occasions in his car and once on a trolley car. His relations with the former cashier since the separation confirm rather than detract from the soundness of her suspicions. The only child of the marriage, Marie, aged eleven and one half years, testified in the behalf of her mother and supported her cause in many respects. Where, as here, the accusing spouse [appellant] so conducts himself with other women that the wife has reason to be suspicious, her accusations furnish no support to the charge of indignities to the person. *Blose v. Blose,* supra, at page 325.

In *Abbott v. Abbott,* 75 Pa. Superior Ct. 483, at page 502, this Court said: "If he gave her occasion to suspect his behavior, he cannot be heard to complain of that which his conduct provoked." See *Manzi v. Manzi,* 112 Pa. Superior Ct. 332, 171 A. 92; *McKrell v. McKrell,* 352 Pa. 173, 42 A. 2d 609.

A case paralleling the factual situation here presented is *Wilson v. Wilson,* 163 Pa. Superior Ct. 546, 63 A. 2d 104, at page 549, wherein this Court said: "However, indignities are not grounds for divorce where they are provoked by the complaining party, provided the retaliation is not excessive. (citing cases) We do not condone respondent's conduct, but it is understandable. If respondent became unduly jealous as libellant charges, it was his own conduct with Betty Shoemaker which produced it, and it was within his power to allay his wife's feelings by discontinuing his improper relations with his employe. His feelings for this girl are clearly revealed by his refusal to discharge her. At the time of the hearing she was again working for him in his

new shop in Waynesburg. While their relationship could have been platonic it would not so appear to a wife whose love for her husband might make her more distrustful than if she did not care for him. Respondent might have been more temperate in her accusations but she could hardly be expected to remain calm and complacent."

Libellant's conduct motivated the remonstrances and accusations of his wife and was sufficient cause to arouse the suspicions of a loving spouse intent on maintaining the family relationship. It is understandable that the respondent might have been petulant before the master during the taking of testimony on the serious charges against her and that she became irritable at times during the ordeal of these long proceedings, replete with humiliating attacks on her conduct. Such petulance and impatience, considering the irritants, do not necessarily detract from that degree of credence which would otherwise be given her testimony. As stated in *Sieno v. Sieno,* 163 Pa. Superior Ct. 479, 481, 61 A. 2d 778; ". . . a woman may have a sharp tongue and still tell the truth." We are of opinion that the evidence fails to clearly establish that the libellant is "an injured and innocent spouse" within the meaning of The Divorce Law.

Decree affirmed.